IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **CVLR PERFORMANCE HORSES, INC.,** | ) | |
| *Plaintiff,* | ) | |
| | ) | **CASE NO. 6:11-CV-00035** |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **JOHN L. WYNNE, et al,** | ) | |
| *Defendants* | ) | |

This matter is before the court upon two motions filed in the protracted litigation between Plaintiff CVLR Performance Horses, Inc. ("Plaintiff") and Defendant John L. Wynne and the entities associated with him ("Defendant"). Defendant has filed a motion to dismiss counts III and IV of the complaint and Plaintiff has filed a motion for leave to amend their complaint for a second time. For the following reasons I will grant Defendant's motion to dismiss in part and deny it in part and grant Plaintiff's motion for leave to amend in part and deny it as moot in part.

## I. BACKGROUND

The factual background on this case is extensive, and the ever-expanding complaint from CVLR does not lend itself to concise summary. I will therefore attempt to list an abbreviated discussion of the facts, focusing on those related to the purchase of the riding center, which is at the heart of the motions currently before the Court. I describe the facts as alleged by the Plaintiff, which at this stage I must accept as true.

The plaintiff, CVLR Performance Horses, Inc., is a closely held corporation owned and operated by its president, Crystal Rivers. In late 2006, Rivers responded to an advertisement of pasture land for rent posted by Jason Wynne, the primary defendant in this case. Wynne convinced Rivers to purchase a horseback riding center and stated that his company, Rivermont

[1]

Consultants, Inc. (previously called The Rivermont Banking Company, Inc.) was a bank that could finance the purchase. In reality, Rivermont was not a bank and on October 12, 2007, Wynne contacted Charles Darnell, the president of Old Dominion National Bank, to inquire about a loan. Wynne falsely informed Darnell that he had contracted to purchase riding center property for $475,000. Darnell prepared a "loan presentation" indicating that Old Dominion would finance 100% of the purchase price. On October 28, 2007, Wynne obtained the signatures of the two members of S & R Farm, Ralph Beck and Shanna Lester, as well as Rivers, on a real estate contract under which S & R Farm promised to sell the riding center property to "CVLR Performance Horses or Assignee."

The next day, Old Dominion approved the loan with the borrower listed as "an LLC to be formed" and the guarantors listed as Wynne and Rivers. Rivers believed the purchaser would be CVLR and that the LLC to be formed would be a new one that she would be a member of. Instead, Wynne had told Old Dominion that 1650 Partners, LLC, an organization under his control, would be the purchaser. On November 13, 2007, S & R Farm wrongly prepared a deed conveying the property to 1650 Partners, LLC instead of CVLR, and on the 15th the deed was executed. On November 20, 2007, the closing occurred, with Rivers mistakenly believing that CVLR was getting the property and giving a mortgage to finance it. Wynne informed Rivers that she was correct in that view.

On September 8, 2011, Plaintiff filed its original complaint. On October 25. 2011 Defendant moved to dismiss. Plaintiff requested leave to amend on November 14, 2011, and on December 19, 2011, this Court granted that leave. Plaintiff filed the amended complaint on December 21, 2011, a day after the Defendant had moved again to dismiss the case. On April 2, 2012, this Court granted the motion to dismiss count one of Plaintiff's claim and exercised its

[2]

discretion to dismiss counts two through four, the supplemental claims. Plaintiff filed a Notice of Appeal on May 2, 2012, and on May 29, 2013, the 4th Circuit reversed this Court's finding on count one and remanded, without comment on the state law claims, for further proceedings. On July 31, 2013, the Defendant once again filed a motion to dismiss. Plaintiff filed a motion to amend the complaint a second time on September 19, 2013 and a motion for joinder to reinstate count two on September 20, 2013. On September 24, 2013, a hearing was held before this Court discussing Defendant's motion to dismiss and Plaintiff's motion to amend.

## II. STANDARD OF REVIEW

The appropriate pleading standard for considering a motion to dismiss for failure to state a claim upon which relief can be granted is that refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The following long-held rule still stands: "In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).[1]

---

[1] While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the

[3]

Federal Rule of Civil Procedure 15(a)(1) suggests that a party may amend its pleading once as a matter of course under certain circumstances. For all subsequent amendments, Rule 15(a)(2) controls, stating that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Leave to amend should only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir. 2004). "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

### III. DISCUSSION

#### A.  The RICO Claim

Plaintiff alleges a violation of the Civil Racketeering and Corrupt Organizations Act by John Wynne, 1650 Partners, LLC, and Rivermont Consultants, Inc. The 4th Circuit found that Plaintiff had sufficiently pleaded open-ended continuity and thus had sufficiently pleaded enough to have Count One of their complaint survive the motion to dismiss phase. *CVLR Performance Horses, Inc., v. Wynne*, 2013 U.S. App. LEXIS 10799, *12 (4th Cir. 2013).

Defendant argues that "[i]n the RICO count, Plaintiff adds allegations that are irrelevant, redundant and do not substantially or materially alter the nature of the claim." Def'.s Opp. To Pl.'s Mot. To Amend 5 (docket no. 110). Defendant does not allege a particular reason why leave

---

complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x. 395, 396–97 (4th Cir. 2006); *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (district court may take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to the complaint).

to amend for count one should not be granted, however. Clearly amendment cannot be futile when the underlying claim is sufficient. Instead, Defendant merely complains that the amendment is excessive and pointless.

I find that the proposed amendment is not clearly insufficient or frivolous on its face While Defendant may be aggravated by the need to adjust to repeated requests to amend, excessive amendment is not equivalent to the kind of bad faith or frivolousness that would be required to deny amendment under Federal Rule of Civil Procedure 15(a)'s liberal standards. Therefore, Plaintiff's motion to amend this count is **GRANTED**.

### B.  The Tortious Interference Claim

Plaintiff alleges that Wynne and 1650 Partners, LLC tortiously interfered with its contract to purchase the riding center. Under Virginia law, the elements required for a prima facie showing of tortious interference with the performance of a contract are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985) (quoting Restatement (Second) of Torts § 766 (1979)).

Plaintiff asserts that they have sufficiently pleaded all four elements under the current version of the complaint. The complaint suggests that Wynne knew that CVLR had a "Purchase Agreement" contract to purchase the property and purchased the property instead, knowingly interfering with CVLR's interest and harming CVLR. Pl.'s Rep. to Def.'s Mot. To Dismiss 15 (docket no. 102). I agree with Plaintiff that these facts do make out a prima facie case for tortious interference with contract.

Defendant persuasively responds that the October 28, 2007 Contract to purchase the farm identified the purchaser as "CVLR Performance Horses or Assignee," that the farm was purchased by 1650 Partners, LLC on November 20, 2007, that Rivers was a member of 1650 Partners at the time, and that Rivers signed an "Entity Authorization" form allowing 1650 Partners to purchase the farm. Def'.s Opp. To Pl.'s Mot. To Amend 5 (docket no. 110). Defendant cites *Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699, 708 (1987) and *Huizenga v. Am. Int'l Auto. Dealers Ass'n*, 2005 U.S. Dist. LEXIS 30972 (E.D. Va. 2005) for the proposition that a person may not intentionally interfere with their own contract. Defendant further cites *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) for the proposition that an agent cannot as a matter of law interfere with his principal's contract. Defendant suggests that because Rivers was a member of 1650 Partners and signed the Entity Authorization form, there cannot be any intentional interference of contract.

Plaintiff asserts that the interference with contract partially occurred on November 15, 2007, before 1650 Partners purchased the farm and Rivers signed paperwork. Pl.'s Resp. to Def.'s Mot. To Dismiss 20 (docket no. 102). Furthermore, Plaintiff alleges that "Count III of the proposed Second Amended Complaint explicitly states that CVLR did not authorize 1650 Partners to buy the property, and states plausible facts that support the allegations of the complaint." Pl.'s Reply to Def.'s Resp Mem. in Opp'n to Pl.'s Mot. To Amend 3 (docket no. 114).

I agree with Defendant that if Plaintiff properly authorized 1650 Partners to purchase the farm, Plaintiff's claim for tortious interference with contract must fail, because Plaintiff's could not interfere with her own contract. *Fox,* 234 Va. at 708. The mere suggestion that Plaintiff was mistaken in signing an Entity Authorization form, which Plaintiff makes in their first amended

complaint, is insufficient to overcome this problem. Pl.'s First Amended Compl. 7 (docket no. 57).  However, I nonetheless conclude that there is a question as to whether Wynne tortiously interfered with Plaintiff CVLR's contract. Plaintiff alleges in the most recent amended complaint that the tortious interference had already occurred by the time the authorization occurred. Thus, I cannot find at this stage of litigation that the claim is inadequate or that amendment would be futile. I note that any pre-trial resolution of this count of the complaint would be more appropriately decided at the summary judgment phase, where evidence may be presented to support the contending claims of the parties about when the interference occurred and whether 1650 Partners was properly authorized to purchase the riding center. Accordingly, I find that plaintiff has pleaded enough to make out a prima facie case of tortious interference with contract, and that Defendant's motion to dismiss is **DENIED** as to count three.

Defendant has suggested that Plaintiff should not be given leave to amend the tortious interference claim because amendment would be futile. Because my finding that the tortious interference count should proceed into the discovery phase necessarily suggests the claim is not frivolous on its face, I find that Plaintiff's motion to amend this count should be **GRANTED**.

### C.  The Business Conspiracy Claim

Plaintiff currently alleges that Wynne, 1650 Partners, LLC, S & R Farm, Beck, and Lester conspired for the purpose of willfully injuring CVLR in its business by the unlawful means of breach of contract. To establish a claim for business conspiracy under Va. Code § 18.2-499, the plaintiff must prove that there was:

> (1) a combination of two or more persons;  (2) for the purpose of willfully and maliciously injuring the plaintiff in reputation, trade, business or profession;  (3) resulting in damage to the plaintiff.  The plaintiff must prove that the conspirators acted with legal malice, that is, acted intentionally, purposefully, and without legal justification.

*Simmons v. Miller*, 261 Va. 561, 578, 544 S.E. 2d 666, 677 (2001).

Plaintiff asserts in their current complaint that Wynne and 1650 Partners, LLC, along with S & R Farm and Old Dominion National Bank, conspired to harm Plaintiff's business "by the unlawful means of breach of contract." Perhaps anticipating that their claim is deficient in this regard, Plaintiff belatedly mentions in their current complaint that the conspiracy "also involved the acts of fraud, obtaining property by false pretenses, and forgery." Pl.'s Resp. Mem. to Def.'s Mot. To Dismiss 32 (docket no. 102). In their proposed amended complaint, Plaintiff, in a similarly conclusory fashion, expands the reach of the conspiracy, suggesting that it was instead a conspiracy to harm CVLR's business more generally. Proposed Second Am. Compl. 75 (docket no. 104).

Defendant has correctly noted that mere breach of contract may not serve as the basis of the unlawful act required for a business conspiracy claim. *See Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985) ("[T]o survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or unlawful purpose"); *Station #2, LLC v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 537 (2010) ("a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Code § 18.2-500"). "Non-performance of a contractual promise does not, without more, create a basis for recovery in tort. Likewise…it [cannot] rise to the level of an 'unlawful act'…[because] the duty of performance under a contract springs solely from the agreement; the duty is not imposed extrinsically by statute." *Lynch*, 280 Va. At 174.

[8]

Thus, Defendant was accurate in noting that Plaintiff's first amended complaint failed to state a claim under the business conspiracy statute.[2] The only question, then, becomes whether the Plaintiff cures this failure in their proposed second amended complaint, or whether Plaintiff's pleading remains "clearly insufficient . . . on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cor. 1986). In broadening the scope of the conspiracy, Plaintiff now seeks to allege that "the Purchase Agreement was itself a sham, created as part of the conspiracy to harm CVLR's business for the defendants' benefit." Pl.'s Reply to Def.'s Resp Mem. in Opp'n to Pl.'s Mot. To Amend 4 (docket no. 114). Plaintiff suggests that Defendants violated "a duty . . . to not conspire to damage (by using the illegal means of fraud, sharp practices, and false pretenses) the equestrian business." *Id.* at 6. According to Plaintiff, these allegations alone satisfy the pleading requirements under Va. Code §18.2-499.

Plaintiff must allege that the defendants combined together to effect "a preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." *Bull v. LogEtronics, Inc.*, 323 F. Supp. 115, 131 (E.D. Va. 1971). Plaintiff does propose to allege in their most recent amended complaint that the defendants had a plan to injure CVLR's business, seemingly meeting this requirement. However, it is long established that "[p]laintiff must at least plead the requisite concert of action and unity of purpose in more than "mere conclusory language." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC,* 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999); *see also Schlegel v. Bank of America, N.A.,* 505 F. Supp. 2d 321, 328 (W.D. Va. 2007) (dismissing Plaintiff's complaint because they had "not pled [their] business conspiracy claim with particularity").

---

[2] I note that Counsel for Plaintiff admitted as much during the September 24, 2013 hearing that the version of Count Four in the first amended complaint would properly be dismissed as failing to state a claim under Va. Code § 18.2-499.

This case is different from *Pre-Fab Steel Erectors, Inc. v. Stephens*, 2009 U.S. Dist. LEXIS 26548, at *50 (W.D. Va. 2009), where "the Complaint [was] sufficiently specific and particular in its entirety to support an inference that the required elements of concerted action, legal malice, and causally related injury have been pleaded." In the present case, Plaintiff has changed the description of their conspiracy claim from a conspiracy to harm Plaintiff's business via breach of contract into one designed to harm the business more generally, but nothing fundamental has been changed about the actions or, more significantly, the intention of the alleged co-conspirators.[3] Although legal malice may be averred generally, *see College Loan Corp. v. SLM Corp.*, 2002 U.S. Dist. LEXIS 27744 (E.D. Va. 2002), a heightened pleading standard requiring sufficient particularity nevertheless exists for business conspiracy claims. Plaintiff's effort to repackage their claim with conclusory statements cannot survive this heightened standard.

Virginia courts have a "long-standing distaste for turning every breach of contract into an actionable [tort] claim." *Zurich Am. Ins. Co. v. Turbyfill*, 2010 U.S. Dist. LEXIS 110056, at *20 (W.D. Va. 2010) (internal citations omitted). The heightened pleading standard exists to avoid that result, and thus is designed to "prevent . . . every business dispute [from] becoming a business conspiracy claim." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). In that case, the pleadings suggested that "defendants . . . made agreements with and mutually [undertook] with third parties for the purpose of willfully and maliciously injuring [the plaintiff] in its trade and/or business." *Id.* These allegations were found to be "[in]sufficiently specific to support the conclusory language that the parties . . . [acted] with the

---

[3] Notably, during the hearing held on September 24, 2013, counsel for the Plaintiff acknowledged that he lacked any explanation whatsoever for why a broader conspiracy would even exist. Although not conclusive on its own, this does indicate that a firm grasp of the facts underlying this claim remains elusive and perhaps explains why the count is pleaded with nebulous language.

purpose of injuring [plaintiff] in its business." *Id.* Except for specifics relating to the alleged breach of contract, which Defendant has demonstrated cannot be the basis for a business conspiracy claim,[4] the allegations of broader conspiracy in the present case are equally conclusory. They are thus inadequate.

I agree with Plaintiff and Defendant that the current version of the complaint merely alleges a conspiracy to breach a contract, an allegation which is not actionable under Virginia law. I further find that the effort to cure this flaw in the second amended complaint is insufficient, because a broader conspiracy is pleaded only in general and unspecific terms, without any particular intention or motive suggested. This lack of specifics is fatal under the heightened pleading standard for business conspiracy claims. Thus, Defendant's motion to dismiss as to this count is **GRANTED**. Because I so find, Plaintiff's motion to amend as to this count is **DENIED AS MOOT**.

## IV. Conclusion

Thus, Defendant's motion to dismiss will be denied in part and granted in part as follows: regarding count three of the complaint, the motion to dismiss will be denied, whereas it will be granted regarding count four. Plaintiff's motion to amend will be denied as moot as to countsfour but will be granted as to counts one and three. An appropriate order follows.

Entered this ___10th___ day of October, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff has tacitly acknowledged as much by admitting that the first amended complaint's version of the business conspiracy claim would properly be dismissed.

[11]