IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **CVLR PERFORMANCE HORSES, INC.,** *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **JOHN L. WYNNE, et al,** *Defendants* | ) ) ) |

CASE NO. 6:11-CV-00035

MEMORANDUM OPINION

This matter is before the court upon two motions filed by Plaintiff CVLR Performance Horses, Inc. ("Plaintiff") to allow Karen Foster (docket no. 126) and Vicki L. Marsh (docket no. 128) to intervene. Plaintiff represents that this Court has the authority to allow Foster and Marsh to intervene under Federal Rule of Civil Procedure 24(b)(1)(B), and that both Foster and Marsh share with the main action common questions of fact and law as to whether Defendant John L. Wynne ("Defendant") committed acts that violated 18 U.S.C. § 1962 and § 1964. I find that although intervention would be proper in this case, the claims of Foster and Marsh are time-barred and equitable tolling is inapplicable. Therefore, I must deny Plaintiff's motions.

I. INTERVENTION STANDARD

Rule 24 requires "timely application" in order to intervene. *See Scardeletti v. Debarr*, 254 F.3d 195, 202 (4th Cir. 2001) (reversed on other grounds) (stating that "[u]nder either Rule 24(a) or 24(b), the application for intervention must be timely"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (noting that "[b]oth intervention of right and permissive intervention require 'timely application'"); *see also L.S. v. Cansler*, 2011 U.S. Dist. LEXIS 139211, at *4 (E.D. N.C. 2011) (explaining that "[Rule 24] itself is silent as to what constitutes a 'timely' motion for intervention. The Fourth Circuit has noted that to determine whether an application for intervention is timely, the following factors should be examined: how far the suit has progressed,

[1]

the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene"). Ultimately, then, "the question must . . . be answered in each case by the exercise of the sound discretion of the court." *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974).

Plaintiff knew about Foster and Marsh at least as early as November 30, 2011, when Plaintiff's First Amended Complaint (docket no. 43) was initially filed, and realistically much sooner as Plaintiff's counsel would have needed to interact with Foster and Marsh in order to learn their stories and add them to the complaint. Despite this, the present motions to intervene are filed nearly two years later. In one District Court opinion in this Circuit, the Court found that one of the major reasons to allow a tardy intervention was because the moving party "proffer[ed] legitimate reasons for . . . delay." *Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 478 (M.D. N.C. 2005). By comparison, in this case, Plaintiff has failed to proffer any reasons whatsoever for this delay; one can infer that Plaintiff's counsel might argue the course of this litigation explains the delay, but neither of Plaintiff's motions included this necessary explanation. In *Brink v. Da Lesio*, 667 F.2d 420, 428 (4th Cir. 1981), the court stated that where "intervention [is] of right, the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive," indicating that courts *should* strictly enforce the requirement in cases like this where intervention is merely permissive.

On the other hand, "[t]he purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardeletti*, 265 F.3d at 202-203 (quoting *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)). Because of the lengthy and circuitous path the litigation in this case has taken, the lawsuit is not "within sight of the terminal" despite Plaintiff's two year delay. When considering the "delay

and prejudice to the original parties," one District Court in this Circuit asserted that "[t]his case is still in the pleading stage, and intervention would [therefore] not unduly delay this case or prejudice the original parties." *U.S. Specialty Ins. Co. v. Southern Copters, LLC*, 2009 U.S. Dist. LEXIS 116369, at *8 (W.D. N.C. 2009). The present case is also still within the pleading stage, with this Court having ruled only relatively recently on Defendant's motion to dismiss. Thus, there is unlikely to be any real prejudice to Defendant from allowing Plaintiff to join Foster and Marsh. Defendant has argued that allowing these two plaintiffs to intervene would make "the discovery process . . . even more cumbersome" and "surely lead to confusion among the jurors," noting that "[t]he complexities of a RICO action alone may be enough to confuse the jury." Def.'s Resp. to Pl.'s Mot. to Intervene 5-6 (docket no. 131).

But while I agree with Defendant that the issues in this case are complicated, I also agree with Plaintiff's remark that "intervention will not confuse the jurors any more than they will already be confused." Pl.'s Reply to Def.'s Resp. Mem. in Opp'n to Pl.'s Mot. to Intervene 6 (docket no. 134). The issues Marsh and Foster seek to prevent are intertwined with the claims CVLR makes in this case. Intervention would thus ordinarily be appropriate.

## II. LIMITATIONS AND EQUITABLE TOLLING

Defendant notes that a four-year statute of limitations applies to private civil RICO claims, running from the "date when the plaintiff discovered, or should have discovered, the injury." *See Potomac Elec. Power Co. v. Electric Motor and Supply, Inc.,* 262 F.3d 260, 266 (4th Cir. 2001); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000). According to Defendant, both Marsh and Foster's RICO claims are time-barred, as their November 8, 2013 motions to intervene are more than four years after their alleged injuries. Notably, while Plaintiff and Defendant contest the date of injury for both prospective plaintiffs, Plaintiff does not contest that

both filings come after the four-year statute of limitations has run. Instead, Plaintiff invokes the doctrine of equitable tolling.

The Supreme Court has stated that in order to be entitled to equitable tolling, the movant must show (1) that he has diligently pursued his rights and (2) that some extraordinary circumstance prevented the timely filing. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). Furthermore, "[t]he Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

The Fourth Circuit has similarly noted the unusual nature of equitable tolling as a remedy and the difficulty any party who seeks to invoke it faces. In one often quoted passage, the Fourth Circuit noted:

> any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would lose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). This standard has been applied to equitable tolling claims regardless of the area of law. *See, e.g., Kuusk v. Holder,* 732 F.3d 302, 306 (4th Cir. 2013) (most recently applying the *Harris* standard to a case involving immigration law). District Courts have also followed the lead of the Supreme Court and the Fourth Circuit in noting the extraordinary nature of equitable tolling, and the high burden required to invoke the doctrine. *See, e.g, Morris v. Frank IX & Sons, Inc.*, 486 F. Supp. 728, 734 n. 4 (W.D. Va. 1980) (stating that "[t]he courts have been extremely reluctant to toll . . . and only under the most extraordinary circumstances has a late filing been excused.").

Finally, I note that "[a] petitioner asserting equitable tolling 'bears a strong burden to show specific facts' to demonstrate that she fulfills both elements of the test." *Nelson v. Watson*, 2013 U.S. Dist. LEXIS 105711, at *12 (E.D. Va. 2013) (quoting *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008)); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Thus, in this case, Plaintiff must convince the Court both that Marsh and Foster have diligently pursued their claims and that an extraordinary circumstance prevented a timely filing of their motions to intervene.

### A. Diligence

The Supreme Court has stated that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *see also Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996) (declining to apply equitable tolling to claim where plaintiff "could have filed his claim properly with even a modicum of due diligence."). The Fourth Circuit has further noted that one way to exercise due diligence is by "actively pursu[ing] . . . judicial remedies by filing a defective pleading during the statutory period." *United States v. Babb*, 54 Fed. Appx. 772, 774 (4th Cir. 2003) (quoting *Irwin*, 498 U.S. at 96).

Plaintiff asserts that "Marsh repeatedly, and continuously, throughout the period from September 2008 through the present, complained to the federal and state criminal authorities, to the banking regulatory agencies responsible for regulating Wells Fargo's business, and to the courts of South Carolina" about Wynne's actions. Pl.'s Reply to Def.'s Resp. Mem. in Opp'n to Pl.'s Mot. to Intervene 3 (docket no. 133). Plaintiff also asserts that "Foster diligently asserted that Wynne had no right to foreclose on her house . . . [during her] Chapter 7 Bankruptcy Case." Pl.'s Reply to Def.'s Resp. Mem. in Opp'n to Pl.'s Mot. to Intervene 2 (docket no. 134).

[5]

Defendant, on the other hand, asserts that Marsh's intervention motion is only supported by "the conclusory statement that she 'acted diligently.'" Def.'s Surreply 2 (docket no. 137). Defendant further argues that "no explanation or factual predicate is offered as to how Foster diligently pursued a RICO claim," noting that a foreclosure action is different from a RICO claim. Def.'s Surreply 2 (docket no. 138).

Ultimately, while I find that Plaintiff has done more than offer conclusory statements, I also find that Plaintiff has not met the very high bar of diligence required to invoke the doctrine of equitable tolling. First, the situation described in *Babb* and *Irwin*, where a plaintiff files a defective pleading during the statutory period, is inapplicable; although Foster did participate in a foreclosure action against Wynne, Defendant is correct that a foreclosure action is distinct from a RICO claim.

Second, to use Marsh as an example, Plaintiff asserts that Marsh was first injured in September 2008, meaning, under Plaintiff's timeline, she would have had until September 2012 to file her RICO claim. Pl.'s Reply to Def.'s Resp. Mem. in Opp'n to Pl.'s Mot. to Intervene 3 (docket no. 133). Plaintiff asserts that the extraordinary circumstance involved in this case is that "this Court dismissed this case on April 1, 2012." *Id.* at 4. But even under Plaintiff's timeline, Marsh waited for more than three and a half years before filing any RICO claim. Assuming Plaintiff's date is correct, which Defendant contests, it is true that Marsh still had time to file, so I cannot say that Marsh failed to act with "even a modicum of due diligence." *Rashidi,* 96 F.3d at 128. On the other hand, however, this court has found that this kind of delay is nevertheless a failure to exhibit the kind of diligence required to invoke the extraordinary remedy of equitable tolling. *See, e.g, Escalante v. Huffman*, 2011 U.S. Dist. LEXIS 81382, at *23 (W.D. Va. 2011) (finding that "Escalante's strategic decision to wait to file his Complaint until near the end of the

statute of limitations period as he believed it to be, despite knowing of his claim by December 2007, does not support diligence in pursuing his claim"). Here, as in *Escalante*, the parties seeking to invoke equitable tolling waited towards the end of the limitations period before filing anything related to a RICO claim. It is not, in other words, a situation where it would be "unconscionable to enforce the limitation period against the party" due to resulting "gross injustice." *Harris*, 209 F.3d at 330.

## B. Extraordinary Circumstances

In the *Harris* opinion, the extraordinary circumstances doctrine is introduced by noting that it requires that "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (citations omitted). In order to understand what the Fourth Circuit viewed as extraordinary circumstances in the *Harris* opinion–and to attempt to explain what is necessarily a somewhat nebulous standard–it is instructive to look to the citations from *Alvarez-Machain* which were omitted by the *Harris* opinion.

*Alvarez-Machain* cites *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991), which in turn cites two other cases to describe what "extraordinary circumstances" means. In *Hanger v. Abbot*, 72 U.S. (6 Wall.) 532, 18 L. Ed. 939 (1867), it was considered an extraordinary circumstance that litigation could not be pursued because the courts in southern states were closed during the Civil War. In *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947), it was considered an extraordinary circumstance when the plaintiff was unable to file because he was held in Japan during the Second World War. In both cases, the assumption underlying the statute of limitations, namely that "one with a good cause of action will not delay

[7]

in bringing it for an unreasonable period of time," was undermined because "plaintiff [had] been denied access to the courts." *Alvarez-Machain*, 107 F.3d 696, 769.

Naturally, the severe exigencies of war described in *Abbot* and *Osbourne* are not the only kind of potential extraordinary circumstance that can justify equitable tolling. However, the case law that the *Harris* court at least in part relied upon does once again emphasize the extraordinary nature of tolling and how reluctant a court should be to apply it. In this case, Plaintiff argues that the parties "acted properly by not bringing [their] RICO claim[s] until after the Court of Appeals held that the RICO claim against Wynne should not have been dismissed," arguing that it "would have been vexatious, and perhaps sanctionable" to do otherwise. Pl.'s Reply to Def.'s Resp. Mem. in Opp'n to Pl.'s Mot. to Intervene 4 (docket no. 133).

I agree with Plaintiff that the dismissal and subsequent appeal produced a difficult circumstance for the parties seeking to intervene. I also agree that peculiarities in the course of litigation may in, exceptional cases, produce the extraordinary circumstances needed to justify equitable tolling. But here, Plaintiff provided no case law or any support for the suggestion that the dismissal and appeal was one of those exceptional cases. *Cf. LaFleur v. Dollar Tree Stores, Inc.*, 2012 U.S. Dist. LEXIS 143514, at *15-18 (E.D. Va. 2012) (noting that, while Plaintiff cited numerous cases discussing litigation related delays in arguing that there were extraordinary circumstances justifying tolling, none of the cases were apt comparisons to the instant facts). Without any support for Plaintiff's suggestion, I cannot find this to be an exceptional case, particularly when the *LaFleur* court refused to find extraordinary circumstances when the plaintiff *had* amply supported their argument. Furthermore, this is not the kind of circumstance where "plaintiff [had] been denied access to the courts," which appears to be the kind of

extraordinary circumstance the *Harris* court had in mind when applying the doctrine to Fourth Circuit law. *Alvarez-Machain*, 107 F.3d 696, 769.

## IV. CONCLUSION

The Supreme Court has stated explicitly that "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mobasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). Bearing that in mind, I find that the statute of limitations period for civil RICO cases has run, equitable tolling is not applicable, and that Plaintiff's motions must therefore be denied. An appropriate order follows.

Entered this 9th day of December, 2013.

*[signature: Norman K. Moon]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE